# 24-2568-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

EVIE COLLAZA, on behalf of herself and all others similarly situated,

*Plaintiff-Appellant,*

— v. —

JOHNSON & JOHNSON CONSUMER INC.,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

JOSEPH H. LANG, JR.
CARLTON FIELDS, P.A.
4221 West Boy Scout Boulevard,
    Suite 1000
Tampa, Florida 33607
(813) 223-7000

MARK A. NEUBAUER
CARLTON FIELDS, LLP
2029 Century Park East, Suite 1200
Los Angeles, California 90067
(310) 843-6300

*Attorneys for Defendant-Appellee*

CP COUNSEL PRESS    (800) 4-APPEAL • (336024)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC ("JJCI"), by and through its undersigned counsel, certifies that it is a wholly owned subsidiary of Kenvue Inc, a publicly traded company and that, upon information and belief, no publicly-held corporation owns more than 10% of Kenvue Inc.'s common stock except for T. Rowe Price Associates, Inc. a subsidiary of T. Rowe Price Group, Inc., a publicly traded company.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iv

STATEMENT OF THE ISSUE ..........................................................................1

INTRODUCTION ..............................................................................................1

STATEMENT OF THE CASE ...........................................................................3

I.      Factual background..................................................................................3

II.     Procedural history ...................................................................................5

STANDARD OF REVIEW ..............................................................................11

SUMMARY OF THE ARGUMENT ................................................................12

ARGUMENT ...................................................................................................14

I.      The regulatory framework. ...................................................................14

II.     The District Court correctly determined that Plaintiff's claims are expressly preempted. ..............................................................................19

          A.     Plaintiff's claims are expressly preempted. ........................................19

          B.     Plaintiff's resort to legislative history is both unnecessary and unavailing. ...........................................................................................25

          C.     The authorities cited by Plaintiff do not address these circumstances and are outliers in any event.......................................28

CONCLUSION .................................................................................................35

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................36

CERTIFICATE OF SERVICE ...............................................................37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) .......................................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................11

*Bailey v. Rite Aid Corp.*,
2019 WL 4260394 (N.D. Cal. Sept. 9, 2019) ...................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................11

*Bischoff v. Albertsons Cos., Inc.*,
678 F. Supp. 3d 518 (S.D.N.Y. 2023) ........................................*passim*

*Canale v. Colgate-Palmolive Co.*,
258 F. Supp. 3d 312 (S.D.N.Y. 2017) .....................................12, 26

*Carter v. Novartis Consumer Health, Inc.*,
582 F. Supp. 2d 1271 (C.D. Cal. 2008)...................................2, 32, 33

*Chamber of Comm. of U. S. v. Whiting*,
563 U.S. 582 (2011)......................................................................12, 27

*Cipollone v. Liggett Grp*,
505 U.S. 504 (1992) .....................................................................14

*City of Pontiac Gen. Emps' Ret. Sys. v. MBIA, Inc.*,
637 F.3d 169 (2d Cir. 2011) ........................................................11

*Corra v. Energizer Holdings, Inc.*,
962 F. Supp. 2d 1207 (E.D. Cal. 2013) .........................................29

*Crozier v. Johnson & Johnson Consumer Cos.*,
901 F. Supp. 2d 494 (D.N.J. 2012)............................................32, 33

*Edwards v. Walmart, Inc.*,
  No. CV 18-9655 (C.D. Cal. Apr. 18, 2019) .................................................28, 29

*Gisvold v. Merck & Co.*,
  62 F. Supp. 3d 1198 (S.D. Cal. 2014).................................................30

*Goldstein v. Walmart, Inc.*,
  2022 WL 16540837 (S.D.N.Y. Oct. 28, 2022)....................................................28

*Harris v. Topco Assocs., LLC*,
  538 F. Supp. 3d 826 (N.D. Ill. 2021).................................................22

*Horti v. Nestle Healthcare Nutrition, Inc.*,
  2023 WL 8613601 (9th Cir. Dec. 13, 2023)......................................................31

*In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*,
  2023 WL 3026412 (S.D.N.Y. Apr. 20, 2023) ..................................................15

*In re Pepsico, Inc.*,
  588 F. Supp. 2d 527 (S.D.N.Y. 2008) .................................................9, 20

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
  512 F. Supp. 3d 1278 (S.D. Fla. 2021) .................................................24

*Jovel v. i-Health, Inc.*,
  2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) ....................................................33, 34

*Kanter v. Warner-Lambert Co.*,
  122 Cal. Rptr. 2d 72 (Cal. Ct. App. 2002)..........................................................22

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) .................................................19

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) .................................................31

*Morgan v. Albertsons Cos., Inc.*,
  2023 WL 3607275 (N.D. Cal. Mar. 13, 2023) ...........................................*passim*

*Musikar-Rosner v. Johnson & Johnson Consumer Inc.*,
  2024 WL 3596897 (D. Mass. July 31, 2024) ...............................................*passim*

*New York SMSA Ltd. P'ship v. Town of Clarkstown*,
    612 F.3d 97 (2d Cir. 2010) ..........................................................27

*Puerto Rico v. Franklin Cal. Tax-Free Trust*,
    579 U.S. 115 (2016)....................................................................12

*Sapienza v. Albertson's Cos., Inc.*,
    2022 WL 17404919 (D. Mass. Dec. 2, 2022)..............................*passim*

*Shomo v. City of New York*,
    579 F.3d 176 (2d Cir. 2009) ........................................................11

*Thomas v. Westchester Cnty. Health Care Corp.*,
    232 F. Supp. 2d 273 (S.D.N.Y. 2002) ............................................6

## Statutes

21 U.S.C. § 301 ...............................................................................14

21 U.S.C. § 379r.........................................................................*passim*

NY Gen. Bus. Law § 349...............................................................3, 7

NY Gen. Bus. Law § 350...............................................................3, 7

## Rules

Fed. R. Civ. P. 12(b)(6)......................................................................7

## Other Authorities

21 C.F.R. § 330.10(a)(7)(i) ..............................................................16

Alan Untereiner, *The Defense of Preemption: A View from the Trenches*,
    84 Tul. L. Rev. 1257 (2010) .....................................................11, 22

H.R. Rep. No. 105-399 (1997)..........................................................27

S. Rep. No. 105-43 (1997) ...............................................................27

**STATEMENT OF THE ISSUE**

Whether the district court correctly determined that Plaintiff's claims seeking to impose state law requirements related to Tylenol® Extra Strength Rapid Release Gelcaps were preempted by 21 U.S.C § 379r(a).

**INTRODUCTION[1]**

In this appeal, Plaintiff asks this Court to go where no less than four other courts have refused – to impose state rules on an over-the-counter drug – here, Tylenol® Rapid Release Gelcaps – which are "different from, or in addition to, or is otherwise not identical" with the regulation established by the federal government under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 379r(a).

Indeed, Plaintiff concedes that the District Court correctly found preemption as to her claims regarding the label for Tylenol® Rapid Release Gelcaps, but somehow claims that the marketing of that label is not preempted. (Init. Br. at 16 n.1). As discussed below, that is a distinction without a difference.

Federal preemption of state law claims on Rapid Release Gelcaps is broad and clear. What Plaintiff is seeking to do is to impose regulations and requirements that cross the line into an exclusive federal area. As one Court noted:

---

[1] Citations to "A-___" refer to pages of Plaintiff's Appendix. Appellant's Initial Brief will be referred to as "Init Br. [page number]" in this response brief. All emphasis is supplied unless otherwise noted.

[T]he analysis under Section 379(r) depends not on the theory upon which the claim is brought, but its ultimate outcome: would a finding of liability impose requirements that are different from or in addition to FDA requirements.

*Carter v. Novartis Consumer Health, Inc*., 582 F. Supp. 2d 1271, 1284 (C.D. Cal. 2008).

By attempting to distinguish between "marketing and pricing" and the label on the product, Plaintiff is making a transparent end-run around federal preemption. Not surprisingly, Plaintiff identifies no decision that has drawn such a distinction from among the multiple decisions that have dealt with this very same product.

To be clear, almost every court that has addressed a similar challenge to Rapid Release Gelcaps has determined that all labeling, marketing, and pricing claims were preempted. No court that has analyzed these claims in a case involving Rapid Release Gelcaps has decided what Plaintiff asks this Court to conclude; that the labeling claim may be preempted (Plaintiff now acquiesces to this determination by the District Court), but that the marketing and pricing claims may survive the preemptive scope of federal law. This Court should reject that invitation.

There is good reason why courts have rejected the distinction Plaintiff asks this Court to indulge and have ruled the way the District Court ruled in this case. Specifically, the District Court determined that the supposed distinction Plaintiff

2

proposed would be "wholly unworkable." A-107. It further explained that, "[t]o hold that the FDA's regulation of acetaminophen dissolution rates ought not control simply because a drug producer markets or prices several of its qualifying 'immediate release' products in varying manners would be to create an end-run around the FDCA's express preemption clause." *Id.* That is, despite Plaintiff dropping her labeling claims, her argument that her marketing and pricing claims should survive preemption truly is "wholly unworkable," as the relief Plaintiff seeks nonetheless implicates JJCI's labeling of its Tylenol® Rapid Release Gelcaps.

## STATEMENT OF THE CASE

### I.    Factual background

Plaintiff filed her lawsuit in the United States District Court for the Southern District of New York asserting four claims regarding Tylenol® Rapid Release Gelcaps: (1) violation of N.Y. General Business Law § 349; (2) violation of N.Y. General Business Law § 350; (3) unjust enrichment; and (4) declaratory relief. A-9–A-41.

The gravamen of the Complaint is that JJCI supposedly misled consumers as to whether Tylenol® Rapid Release Gelcaps provide "faster relief" than "non-rapid release products." A-9–A10 ¶¶ 3, 4. Plaintiff saw the words "'rapid release' offering 'rapid relief'" and "hoped for faster relief of pain," A-26 ¶ 67, yet, in her

"experience," the product "did not work faster" than "cheaper acetaminophen products." A-27 ¶ 69. But the Complaint quotes others stating that, in *their* experience, Tylenol® Rapid Release Gelcaps *did* provide "'faster acting'" relief, A-22 ¶ 55(b); or were "'easy to take'" and "'do provide strong relief'" even if the consumer "'can't really tell that they work any faster than any other pain relief pill.'" A-22 ¶ 55(c). JJCI allegedly "charges a premium for its rapid release gelcaps" but "has long known that traditional, non-rapid release acetaminophen products can be equally effective in the same time period (if not in a faster time period)." A-10 ¶¶ 5, 7.

Tylenol® Rapid Release Gelcaps have laser-drilled holes to allow the release of medicine in a manner different from other gelcaps. A-18–A-19 ¶ 48. The Complaint recites advertising phrases used from 2005 to 2007, which highlighted that the holes in the "new gelcaps" enabled release of medicine in the gelcaps "faster than before," and alleges that this reference could be misconstrued to mean not just "faster than" prior gelcaps without the holes but "faster than" any and all other formulations. A-17 ¶¶ 38, 39, A-20 ¶ 51(e). Plaintiffs then point to a 2018 study as supposedly showing that "these products not only fail to work faster, they actually work *slower* than" acetaminophen "tablets." A-24 ¶ 57 (emphasis in original). Plaintiff does not allege that she saw and relied on any such "faster than before"

4

marketing slogan, which was discontinued more than 15 years before she allegedly bought the product. A-25–A-27 ¶¶ 64–72.

Plaintiff alleges she "would not have purchased" the Rapid Release Gelcaps had JJCI "disclosed accurate" information and "not misled" her into believing the Gelcaps "would provide faster relief than other, cheaper acetaminophen products" such as "Tylenol® tablets." A-11 ¶ 10. Her proposed class consists of all persons who bought the medicine in New York. A-27–A-28 ¶ 75.

Plaintiff did not allege that she suffered physical injury from taking the Rapid Release Gelcaps. Nor did she allege that the product failed to give her pain relief. Her claims are premised solely on *economic loss* in allegedly paying a premium for faster relief than Plaintiff believes she got from the product. A-25–A-27 ¶¶ 64–72.

## II.    Procedural history

 This case does not arise on a clean slate. Rather, after four years litigating virtually identical claims resulted in the District of New Jersey dismissing with prejudice all claims in *Hernandez v. Johnson & Johnson Consumer Inc*., 2023 WL 2634496 (D.N.J. Mar. 24, 2023), Plaintiff's counsel filed this suit and a similar case in the District of Massachusetts once again alleging consumer fraud arising from dissolution speeds of Rapid Release Gelcaps, based on the exact same allegations and 2018 dissolution study at issue in *Hernandez*. Multiple courts, however, have determined that these types of claims involving rapid release

gelcaps are expressly preempted under 21 U.S.C. § 379r(a). *See Musikar-Rosner v. Johnson & Johnson Consumer Inc.*, No. 23-CV-11746, 2024 WL 3596897 (D. Mass. July 31, 2024); *Bischoff v. Albertsons Cos., Inc.*, 678 F. Supp. 3d 518 (S.D.N.Y. 2023); *Morgan v. Albertsons Cos., Inc.*, 2023 WL 3607275 (N.D. Cal. Mar. 13, 2023); *Sapienza v. Albertson's Cos.*, 2022 WL 17404919 (D. Mass. Dec. 2, 2022). Conspicuously, Plaintiff cites none of these cases in her brief.

Yet, all of these suits are premised on the same study Plaintiff relies on here, comparing how quickly the rapid release gelcaps of five companies "dissolve" in a solution when compared to the tablet version of those drugs. *See* A-10 ¶ 6 & n.3, A-24 ¶¶ 57–58 & nn.57–58 (citing Kaury Kucera et al., *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, ADVANCES IN INVESTIGATIONAL PHARMACOLOGY & THERAPEUTIC MED. 1:63–71 (2018)) ("2018 Dissolution-Rate Study" or "Study").[2] The Study found that the Tylenol® Rapid Release Gelcaps and tablets reached 80% dissolution in under 4 minutes. *See* ECF 38 Ex. 1 (2018 Dissolution-Rate Study at 4 & tbl. 2). Those reported study results confirm that both Tylenol® formulations readily meet the

---

[2] The Court may properly consider the Study under the "incorporation by reference" doctrine, and otherwise, because its authenticity is not subject to dispute, Plaintiff relies on the Study and refers to it in her brief, and the Study is integral to and forms the basis of the claims asserted. *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). The District Court properly considered and cited the Study. *See* A-101.

FDA's federal standards for what are "rapidly" dissolving and even "immediate" release medications.

On July 13, 2023, Plaintiff filed her class action suit against JJCI alleging (1) violation of New York General Business Law § 349, (2) violation of New York General Business Law § 350, (3) unjust enrichment, and (4) seeking declaratory relief. A-9–A-41. JJCI moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). A-42–A-44; *see* ECF 38 (memorandum of law in support of motion to dismiss).

JJCI also requested that the District Court take judicial notice of the Pharmacopeia, the Dissolution Testing Guidance, and the Waiver. A-49–A-98. The Pharmacopeia is a publicly available official publication of the United States Pharmacopeia ("USP"), which is a non-profit organization that annually publishes the United States Pharmacopeia, which promulgates standards enforced by government agencies such as the Food and Drug Administration ("FDA"). The standards promulgated by the USP are also published by a council of experts chosen by the United States Pharmacopeia Convention ("USPC") and are written into the Food Drug and Cosmetic Act. The Dissolution Testing Guidance and the Waiver are official publications of the United States Department of Health containing industry guidance and advice to consumers on all immediate release oral dosage products. The District Court correctly took judicial notice of these documents. A-100 n.1. The

documents are included in the Joint Appendix. *See* A-54–A-98. Plaintiff does not challenge that ruling in this appeal.

JJCI also filed an affidavit in support of its motion to dismiss, A-45–A-48, and Plaintiff filed a memorandum in opposition to JJCI's motion to dismiss. ECF 41. On August 27, 2024, the District Court issued its Order granting JJCI's motion to dismiss. A-99–A-108.

Although Plaintiff has abandoned her labeling claims on appeal, she pressed her labeling, marketing, and pricing claims together in the District Court. The District Court explained explicitly why it rejected all of those claims as being preempted. The District Court first observed the following:

> The *Bischoff*, *Sapienza*, and *Morgan* courts all came to the same conclusion that similar allegations as to "rapid release" acetaminophen products were preempted by the FDCA's regulation of "immediate release" tablets. These Courts came to the same conclusion through similar analytical means. The *Bischoff* and *Sapienza* Courts found that the "immediate release" and "rapid release" terms both referred to the products dissolution rate and were sufficiently similar such that they were covered by the FDA regulations. 2022 U.S. Dist. LEXIS 217368, at *8; *see also* 678 F. Supp. at 527 ("[I]t would be nonsensical to allow a manufacturer to evade an FDA requirement simply by coming up with a phrase that addresses the subject matter of the regulation but in different phraseology.") The *Morgan* Court, on the other hand, went so far as to find that "[a]s a matter of logic," the FDA regulation's "designation of the gelcaps as 'immediate release' *encompasses* a representation of those gelcaps as 'rapid release.'" 2023 U.S. Dist. LEXIS 93108, at *16.

A-104–A-105. The District Court then explained that it agreed with "the majority of its sister courts" that these claims are preempted:

> This Court disagrees with Plaintiff's argument and joins the majority of its sister district courts in their holdings here. As this Court has previously held,
>
> > Where federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements. Thus, although the standard of identity does not define the term "pure" or specify when it is permissible to place a cartoon-like image of a mountain range on a purified water label, the FDA considered misrepresentations regarding source and chose to regulate the labeling requirements for the disclosure of source information, and in so doing it determined that purified water should be exempted. Accordingly, any state law claims premised on a misrepresentation about the source of purified water are preempted.

A-105–A-106 (quoting *In re Pepsico, Inc.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008)). The District Court continued that,

> as *Bischoff* counsels,
>
> > That the FDA did not use the exact words "rapid release" in its regulations surely cannot mean that the FDA does not regulate the subject matter of OTC acetaminophen dissolution standards where, as described in detail above, it has published regulations and guidance addressing when an OTC acetaminophen product can be considered "immediate release," "rapidly dissolving," and "very rapidly dissolving."

A-106 (quoting *Bischoff*, 678 F. Supp. 3d at 526–27).

9

In addition to addressing the labeling claims that Plaintiff now abandons on appeal, the District Court specifically addressed and rejected Plaintiff's marketing and pricing claims: "Perhaps in hopes of side-stepping this precedent and the issue of preemption altogether, Plaintiff advances an additional theory of this case." A-107. "This theory proceeds by characterizing the FDA's regulations as singularly governing acetaminophen drug labeling and having no effect on the advertisement, marketing, or pricing of acetaminophen products." *Id.* The District Court deemed Plaintiff's "theory wholly unworkable. To hold that the FDA's regulation of acetaminophen dissolution rates ought not control simply because a drug producer markets or prices several of its qualifying 'immediate release' products in varying manners would be to create an end-run around the FDCA's express preemption clause." *Id.* "Much ink has been spilled on the separation of powers interests which undergird the Court's decision on this front." *Id.* The District Court then referenced the *Sapienza* court's similar conclusion:

> *Sapienza* notes that "Congress's adoption of a preemptive scheme . . . ensures that the legal rules governing complex areas of the economy or products are formulated by expert regulators with a broad national perspective and needed scientific or technical expertise, rather than by decision makers—such as municipal officials, elected state judges, and lay juries—who may have a far more parochial perspective and limited set of information." 2022 U.S. Dist. LEXIS 217368, at *9 (citing Alan Untereiner, *The Defense of Preemption: A View from the Trenches*, 84 Tul. L. Rev. 1257, 1262 (2010)).

A-107.

The District Court entered judgment in favor of JJCI and this appeal ensued. A-109–A-110.

## STANDARD OF REVIEW

This Court "reviews de novo a district court's grant of a defendant's motion to dismiss, 'accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.'" *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).

A motion to dismiss is properly granted if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[R]ecitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, claims that are preempted by federal law fail to state a claim upon which relief may be granted. *See Bischoff*, 678 F. Supp. 3d at 522–23. Under the Supremacy Clause of the U.S. Constitution, any state law that conflicts with federal law is without effect. *Id.* at 522. Where Congress has expressly manifested its intent to preempt state law, there exists no presumption against preemption and, instead, courts focus on the plain wording of an express preemption provision as it provides the best evidence of Congress' preemptive intent. *Id.* at 522–23 (citing *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 319 (S.D.N.Y. 2017)); *see also Puerto*

*Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016); *Chamber of Comm. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011).

## SUMMARY OF THE ARGUMENT

The District Court properly dismissed this case after determining that Plaintiff's claims directed at the labeling, marketing, and pricing of Tylenol® Rapid Release Gelcaps are expressly preempted. On appeal, Plaintiff abandons her labeling challenges, thus acquiescing in the District Court's labeling ruling and in the fact of preemption. In turn, Plaintiff's appeal, which focuses only on her marketing and pricing claims, is thus simply a challenge to the scope of preemption. Her strategic pivot is unavailing.

Plaintiff's marketing and pricing claims are expressly preempted under 21 U.S.C. § 379r(a) because they depend upon state requirements that are different from, in addition to, or not identical with, the federal government's requirements and regulatory standards.

As the District Court recognized, Plaintiff's attempt to distinguish her marketing and pricing claims from her labeling claims would "create an end-run around the FDCA's express preemption clause" and would be "wholly unworkable." To be clear, Plaintiff's fundamental allegation is that Rapid Release Gelcaps do not dissolve as quickly as regular acetaminophen tablets. Yet, JJCI's marketing and

12

pricing its Gelcaps as being rapid release or rapidly dissolving is completely consistent with the federal regulatory guidance.

Because the FDA regulates the subject of dissolution standards and does not require any specific disclaimers addressed to the comparative dissolution rates, Plaintiff's marketing and pricing claims are preempted because she necessarily seeks to impose additional obligations on JJCI that are not required by the federal regulatory scheme. Simply put, Plaintiff's requested relief, which presumptively would require that the Rapid Release Gelcaps not say "Rapid Release" or that they contain a disclaimer that other products dissolve faster, would create different and additional obligations for JJCI. Plaintiff's suggestion otherwise is mere semantic gamesmanship. Thus, the *Musikar-Rosner, Bischoff*, *Morgan*, and *Sapienza* courts properly determined that similar claims were expressly preempted and did not indulge the distinction that Plaintiff now urges on appeal.

Moreover, the plain language of the federal regulatory scheme makes Plaintiff's resort to legislative history both unnecessary and unavailing. In any event, the legislative history does not support Plaintiff's claims on appeal.

Finally, although Plaintiff tellingly avoids citing any authorities that address preemption in this exact context, she cites other authorities that are factually and legally distinct from the issues in this appeal. None of the authorities cited by Plaintiff calls into question the correctness of the District Court's decision.

## **ARGUMENT**

**I.      The regulatory framework.**

The Federal Food, Drug, & Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. ("FDCA") authorizes the FDA to regulate OTC drug labeling and marketing. The FDCA contains an express preemption clause for OTC drugs that preempts "any requirement" that is "different from or in addition to" or "otherwise not identical with" the FDCA:

> [N]o State or political subdivision of a State may establish or continue in effect any requirement – (1) that relates to the regulation of a drug that is not subject to the requirements of section 353(b)(1) or 353(f)(1)(A) of this title [including OTC drugs]; and (2) is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter.

21 U.S.C. § 379r(a); *see also Bischoff*, 678 F. Supp. 3d at 523.

It is well settled that the preemption of state law "requirements" extends past statutory law to include rules and duties under state common law as well. *See, e.g., Cipollone v. Liggett Grp., Inc*., 505 U.S. 504, 521 (1992); *Bischoff*, 678 F. Supp. 3d at 523 ("[T]he term 'requirements' . . . reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties.") (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005)).

"Therefore, regardless of the source of state law, and regardless of whether the alleged misrepresentation appears in the label, on the packaging, or in advertisements elsewhere, Section 379r preempts state law claims to the extent that

14

those claims 'would effectively require a manufacturer to include additional or different information on a federally approved label.'" *Morgan*, 2023 WL 3607275, at *5 (citation omitted).

From 1972 to 2020, the FDA employed a four-step process when issuing binding regulations on OTC drugs. *Bischoff*, 678 F. Supp. 3d at 523 n.2 (citing *In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*, No. 22-CV-8830, 2023 WL 3026412, at *4 (S.D.N.Y. Apr. 20, 2023)). During that time period, "the monograph system involved four regulatory steps: (1) an advisory review panel was established to evaluate the safety and effectiveness of the OTC drug; (2) the advisory review panel submitted its report to the FDA Commissioner; (3) the FDA published a tentative final monograph ('TFM'); and (4) after receiving comments on the TFM, the FDA published a final monograph." *Bischoff*, 678 F. Supp. 3d at 523 n.2 (quoting *In re Acetaminophen*, 2023 WL 3026412, at *4).

The FDA published a tentative final monograph governing acetaminophen and other OTC drugs. *See* Internal Analgesic, Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph, 53 Fed. Reg. 46204-01, 46251, 46260 (Nov. 16, 1988) ("1988 TFM"). The 1988 TFM establishes the "conditions under which a category of OTC drugs or specific OTC drugs [including acetaminophen] are generally recognized as safe and effective and not misbranded." 21 C.F.R. § 330.10(a)(7)(i). The 1988 TFM then became a final

15

order upon the passage of the CARES Act in 2020. *See* A-102 (citing *Bischoff*, 678 F. Supp. at 524).

The 1988 TFM incorporates the dissolution standards for acetaminophen tablets promulgated in the USP. *See* 53 Fed. Reg. at 46247, 46251, 46260. "The USP standards identify acetaminophen tablets as 'immediate release' when a product dissolves by at least 80% after 30 minutes." *Sapienza*, 2022 WL 17404919, at *2; *see also Bischoff*, 678 F. Supp. at 523–24 ("the 1988 TFM incorporates the dissolution standards for acetaminophen tablets promulgated in the USP"; pursuant to USP standards, any acetaminophen tablet may be identified "as 'immediate release' when a product dissolves by at least 80% after 30 minutes"); *Morgan*, 2023 WL 3607275, at *3 ("the immediate release designation for acetaminophen tablets requires that 'not less than 80%' of the drug be 'dissolved in 30 minutes'") (quoting UNITED STATES PHARMACOPEIA CONVENTION 2033 (35th rev. 2011)).

The FDA has also published two guidance documents that are relevant here: (1) Dissolution Testing and Acceptance Criteria for Immediate-Release Solid Oral Dosage Form Drug Products Containing High Solubility Drug Substances: Guidance for Industry, U.S. Department of Health and Human Services et al. (Aug. 2018) (the "Dissolution Testing Guidance") (A-70–A-78); and (2) Waiver of In Vivo Bioavailability and Bioequivalence Studies for Immediate-Release Solid Oral Dosage Forms Based on a Biopharmaceutics Classification System: Guidance for

16

Industry, U.S. Department of Health and Human Services et al. (Dec. 2017) (the "Immediate-Release Guidance") (A-79–A-98).

The Dissolution Testing Guidance provides: "For immediate release solid oral drug products containing a high solubility drug substance (as defined herein), the dissolution criterion is Q=80% in 30 minutes." A-78; *see Bischoff*, 678 F. Supp. at 524. The Immediate-Release Guidance provides that an immediate release drug product is "considered *rapidly dissolving* when a mean of 85 percent or more of the labeled amount of the drug substance dissolves within 30 minutes" and "considered *very rapidly dissolving* when a mean of 85 percent or more of the labeled amount of the drug substance dissolves within 15 minutes." A-85 (emphasis in original); *see Sapienza*, 2022 WL 17404919, at *2; *Bischoff*, 678 F. Supp. at 524.

It bears emphasis that this same standard in the FDA Guidance is explicitly acknowledged in the 2018 Dissolution-Rate Study: "any oral medication that dissolves in 30 minutes or less [is] essentially as rapid as possible in terms of dissolution." ECF 38 Ex. 1 (2018 Dissolution-Rate Study at 7). The only scientific study the Complaint cites is the 2018 Dissolution-Rate Study, but Tylenol® Rapid Release Gelcaps indisputably meet the foregoing standards according to that study. That is, JJCI's challenged products readily satisfy the federal regulatory standards for what constitutes "immediate release," "rapidly dissolving," and "very rapidly dissolving" OTC medications. Indeed, *both* Tylenol® formulations reached 80

17

percent dissolution in less than 4 minutes, almost or more than *two-times faster* than the cheaper generic competitors' rapid release and traditional tablet formulations manufactured by Rite Aid, Walgreens, CVS, and Walmart. In order of speed, the Study's dissolution testing results (reported in the Study's Table 2) are:

| 1 | Tylenol® tablet | 3.56 minutes | (± 0.05) |
|---|---|---|---|
| 2 | Tylenol® Rapid Release Gelcaps | 3.94 minutes | (± 0.03) |
| 3 | Walmart Equate tablet | 7.04 minutes | (± 0.25) |
| 4 | Rite Aid tablet | 7.47 minutes | (± 0.10) |
| 5 | CVS rapid/fast release gelcaps | 7.56 minutes | (± 0.19) |
| 6 | Walgreen tablet | 7.71 minutes | (± 0.10) |
| 7 | Walmart Equate rapid release gelcaps | 8.43 minutes | (± 0.14) |
| 8 | Walgreen rapid release gelcaps | 8.73 minutes | (± 0.14) |
| 9 | CVS tablet | 9.08 minutes | (± 0.19) |
| 10 | Rite Aid rapid release gelcaps | 9.18 minutes | (± 0.17) |

ECF 38 Exh. 1 (2018 Dissolution-Rate Study at 7 & tbl. 2 (listing results)). As the 2018 Dissolution-Rate Study reveals, Plaintiff bases her supposed consumer fraud on just a 22.8 second differential in dissolution rates between the Tylenol® Rapid Release and Tylenol® tablets despite the undisputed fact that both Tylenol® formulations more than satisfy the FDA's regulatory dissolution standards for what OTC acetaminophen may be called *immediate* in terms of their release, as well as *rapid* and *very rapid* in terms of dissolution. Indeed, both Tylenol® formulations are not just seconds but minutes more rapid than any of their competitors.

Thus, the most Plaintiff can allege is that this "new study" suggests that Tylenol® Rapid Release Gelcaps "dissolve" just a fraction of a minute slower than what Plaintiff calls "J&J's non-rapid release products." A-10 ¶ 6. Yet, nowhere is JJCI alleged to have stated that Rapid Release Gelcaps "dissolve faster than Tylenol® tablets." Therefore, this study's results do not prove "actually false" any JJCI statement identified in the Complaint. *See, e.g.*, *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1090, 1092, 1097–98 (9th Cir. 2017).

## II. The District Court correctly determined that Plaintiff's claims are expressly preempted.

### A. Plaintiff's claims are expressly preempted.

The District Court correctly concluded that all of Plaintiff's claims are expressly preempted. A-104–A-108. In doing so, the District Court joined many of its sister courts in reaching the same conclusion in cases involving rapid release gelcaps. *See Musikar-Rosner v. Johnson & Johnson Consumer Inc.*, No. 23-CV-11746, 2024 WL 3596897 (D. Mass. July 31, 2024); *Bischoff v. Albertsons Cos., Inc.*, 678 F. Supp. 3d 518 (S.D.N.Y. 2023); *Morgan v. Albertsons Cos., Inc.*, 2023 WL 3607275 (N.D. Cal. Mar. 13, 2023); *Sapienza v. Albertson's Cos.*, 2022 WL 17404919 (D. Mass. Dec. 2, 2022). All of these cases determined that the

plaintiffs' claims directed at rapid release gelcaps were preempted under 21 U.S.C. § 379r(a).[3]

The District Court analyzed the preemption issue and determined that, "[w]here federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements." A-105–A-106 (quoting *In re Pepsico, Inc.*, 588 F. Supp. 2d at 538)). The District Court also reasoned: "That the FDA did not use the exact words 'rapid release' in its regulations surely cannot mean that the FDA does not regulate the subject matter of OTC acetaminophen dissolution standards where, as described in detail above, it has published regulations and guidance addressing when an OTC acetaminophen product can be considered 'immediate release,' 'rapidly dissolving,' and 'very rapidly dissolving.'" A-106 (quoting *Bischoff*, 678 F. Supp. 3d at 526–27). The District Court's analysis is consistent with

---

[3] One outlier in this chain of authority is *Bailey v. Rite Aid Corp.*, 2019 WL 4260394 (N.D. Cal. Sept. 9, 2019). In that case, the court determined that there was no express preemption of the state law claims. The court did not draw the distinction, however, between labeling claims and marketing and pricing claims that Plaintiff urges on appeal. Notably, the reasoning of the *Bailey* case was discredited by a later case from that same district. In *Morgan*, 2023 WL 3607275, the court not only followed *Sapienza* and *Bischoff* in holding that consumer fraud claims based on the allegedly deceptive labeling and marketing of rapid release gelcaps were preempted, but resoundingly refuted the reasoning from *Bailey*. Not surprisingly, Plaintiff does not cite *Bailey* in her brief.

the analysis of its sister courts in the *Musikar-Rosner*, *Bischoff*, *Morgan*, and *Sapienza* cases.

In the face of that authority, Plaintiff has abandoned her labeling claims on appeal. (Init. Br. at 16 n.1) ("Plaintiff does not appeal the District Court's first conclusion, which was the bulk of its analysis: that Plaintiffs claim about the label claim 'rapid release' being false or misleading was preempted because the regulation governing labeling of 'immediate release' products necessarily covered 'rapid release' products."). Instead, Plaintiff asserts on appeal on that her "claims arise from J&J's deceptive marketing and pricing of its Rapid Release Gels to consumers, causing injury to consumers purchasing the products in New York courts." (Init. Br. at 18).

Yet, the District Court directly addressed Plaintiff's marketing and pricing claims in determining that all of Plaintiff's claims are expressly preempted. In particular, the District Court deemed Plaintiff's assertion that her marketing and pricing claims can survive preemption "wholly unworkable" and an attempt "to create an end-run around the FDCA's express preemption clause." A-107. The District Court went on to explain the following:

> Much ink has been spilled on the separation of powers interests which undergird the Court's decision on this front. *Sapienza* notes that "Congress's adoption of a preemptive scheme . . . ensures that the legal rules governing complex areas of the economy or products are formulated by expert regulators with a broad national perspective and needed scientific or technical expertise, rather than by decision

makers—such as municipal officials, elected state judges, and lay juries—who may have a far more parochial perspective and limited set of information." 2022 U.S. Dist. LEXIS 217368, at *9 (citing Alan Untereiner, *The Defense of Preemption: A View from the Trenches*, 84 Tul. L. Rev. 1257, 1262 (2010)).

A-107.

Moreover, the *Musikar-Rosner, Bischoff*, *Morgan*, and *Sapienza* courts likewise rejected all of the plaintiffs' claims in those cases, which all involved rapid release gelcaps. Plaintiff cites none of these cases in her brief.

In *Musikar-Rosner*, the court collected and assimilated the analysis from the *Bischoff* and *Sapienza* courts in specifically rejecting the plaintiff's marketing and pricing claims.

Finally, Plaintiff's argument that although "[t]he FDCA and FDA regulations govern how OTC acetaminophen drugs are labeled," they "do not regulate how companies choose to advertise, market, or set pricing of those same OTC acetaminophen products," [Opp'n at 14], misconstrues the issue at hand. The gravamen of Plaintiff's case is that rapid release gelcaps do not dissolve as quickly as regular acetaminophen tablets, which renders J&J's advertising of its product false and misleading. See generally [Compl.]. However, as discussed above, advertising gelcaps as "rapidly dissolving" is accurate pursuant to the TFM and FDA guidance on the dissolution standards for acetaminophen OTC tablets. See supra. Thus, "[b]ecause the FDA regulates the subject of dissolution standards and '[ ] the TFM does not require any specific disclaimers concerning . . . the [comparative rate of dissolution among products, Plaintiff's] claims are preempted because she seeks to impose additional obligations on [Defendant] not imposed by the TFM.'" *Bischoff*, 678 F. Supp. 3d at 527 (quoting *Harris v. Topco Assocs.*, LLC, 538 F. Supp. 3d 826, 833 (N.D. Ill. 2021)); *see also Kanter* [*v. Warner-Lambert Co.*, 122 Cal. Rptr. 2d 72, 84–85 (Cal. Ct. App. 2002)] ("[W]hen a state law claim, however couched, would effectively require a manufacturer to include

22

additional or different information on a federally approved label, it is preempted."); *Sapienza*, 2022 WL 17404919, at *3 (because the labeling description complies with FDA guidance, the fact "[t]hat similar [J&J Tylenol®] products may dissolve just as (or even more rapidly) is no more relevant as a comparison than is a bag of ice labeled 'frozen' as opposed to one simply branded as 'ice' " for the purpose of preemption).

*Musikar-Rosner*, 2024 WL 3596897, at *7.

Of course, the *Bischoff* case is squarely on point. The *Bischoff* court held that all of the causes of action asserted in the Complaint, including one under New York's consumer fraud statutes and arising from the allegedly deceptive labeling and marketing of rapid release gelcaps, are expressly preempted. 678 F. Supp. 3d at 521–22. Notably, the *Bischoff* court explicitly rejected a comparable effort to escape preemption by reference to "whether the product's position with lower-priced non-rapid release tablets would be misleading," explaining that this is a distinction without a difference under section 379r(a) and *Sapienza*. 678 F. Supp. 3d at 527 (it is "not relevant that other similar products 'may dissolve just as (or even more) rapidly,' because 'acetaminophen dissolution rates . . . are covered under existing FDA guidance' and therefore the claims [a]re preempted") (quoting *Sapienza*, 2022 WL 17404919, at *3–*4)).

In *Morgan*, the court not only followed *Sapienza* and *Bischoff* in holding that consumer fraud claims based on the allegedly deceptive labeling and marketing of rapid release gelcaps were preempted, but it specifically referenced the following

23

analysis in doing so: "Another district court recently cited these and other cases for the proposition that 'claims that are founded in FDA-approved labeling [are] pre-empted under § 379r, regardless of how those claims are styled,' including 'state-law advertising claims, provided the advertisements are based upon content approved by the FDA for a drug's labeling.'" 2023 WL 3607275, at *5 (quoting *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 512 F. Supp. 3d 1278, 1297 (S.D. Fla. 2021)).

At bottom, Plaintiff's claims are invariably preempted because they are predicated on the representation that the Gelcaps are "rapid release." Plaintiff's requested relief, which presumptively would require that the Rapid Release Gelcaps not say "Rapid Release" or that they contain a disclaimer that other products dissolve faster, would create different and additional obligations for JJCI. That is, Plaintiff's arguments regarding "contextual inferences" and product placement, if allowed, necessarily would implicate label changes or label disclaimers. (*See* Init. Br. at 24–26). It blinks reality to suggest otherwise.

It takes little imagination to envision the hodgepodge of conflicting requirements JJCI would face if this Court were to accept Plaintiff's invitation to disregard the "National uniformity for nonprescription drugs" Congress established with 21 U.S.C. § 379r's express preemption mandate. For instance, to overcome challenges to product placement and "contextual inferences" in Massachusetts, JJCI

24

might have to change the words "fast" and "rapid" and add a disclaimer that the product "does not dissolve faster" than Tylenol® tablets." But, in New York, JJCI's current labeling, marketing and pricing might be permitted. In Connecticut, JJCI might have to provide a different warning or disclaimer that Tylenol® Rapid Release Gelcaps "may not dissolve faster than Tylenol® tablets, but do dissolve faster than many other companies' tablets and gelcaps." And so on. Of course, this is precisely the non-uniform regulation Congress prohibited when it enacted section 379r(a)'s preemption provision.

Once the FDA has regulated the subject matter at issue, express preemption operates to prevent plaintiffs from using state law to supplement the federal regime with any different, additional, or otherwise non-identical requirements. 21 U.S.C. § 379r(a). Here, the FDA indisputably regulates the subject of dissolution standards. Because the FDA regulates the subject matter and substance of Plaintiff's claims, which are all rooted in comparative dissolution rates, her claims are expressly preempted under 21 U.S.C. § 379r(a). That is, Plaintiff's claims necessarily are based on state-law requirements that are "different from" or "in addition to" those imposed by federal law.

**B.    Plaintiff's resort to legislative history is both unnecessary and unavailing.**

Next, Plaintiff asserts that the legislative history of 21 U.S.C. § 379r supports her argument that her marketing and pricing claims should survive preemption. Not

so. Resort to legislative history is unwarranted when the plain language of the statutory provision makes clear Congress' preemptive intent. Here, Plaintiff has abandoned any challenge to the fact of preemptive intent and, instead, argues only about the scope of preemption under 21 U.S.C. § 379r. That is, Plaintiff has acquiesced in the District Court's determination that her labeling claims are preempted by the federal regulatory scheme. She is proceeding only on her marketing and pricing claims. Yet, because her marketing and pricing claims necessarily implicate the labeling concerns, those claims must fail under the plain language of 21 U.S.C. § 379r, as well.

To be clear, Plaintiff's case is that Rapid Release Gelcaps do not dissolve as quickly as regular acetaminophen tablets, which she says renders JJCI's advertising of its product false and misleading. But Plaintiff has now abandoned any argument that describing the Gelcaps as rapid release or rapidly dissolving is inaccurate pursuant to the TFM and FDA guidance on the dissolution standards for acetaminophen OTC tablets. No additional disclaimers are required under the federal regulatory scheme and efforts to impose such additional obligations would be plainly preempted.

When considering whether a federal statute expressly preempts state laws, "courts focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Canale*, 258 F. Supp. 3d at 319

(quoting *Whiting*, 563 U.S. at 594). "The key to the preemption inquiry is the intent of Congress. Congress may manifest its intent to preempt state or local law explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law." *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)).

Notwithstanding, if resort were to be made to the legislative history, that effort would support, not undermine, the fact that Plaintiff's marketing and pricing claims are preempted. Indeed, the *Sapienza* court noted the following about the relevant legislative history:

> Further support for this commonsense interpretation is found in the Senate Report accompanying the bill that established the preemption provision at issue. *See* S. Rep. No. 105-43, at 64 (1997) ("No State or local government is permitted to impose different or additional requirements that relate to the subject matter covered by the three Federal laws as they apply to nonprescription drugs and cosmetics. These include requirements imposed on product manufacture or composition, labeling, advertising, or any other form of public notification or communication.").

2022 WL 17404919, at *3.

The *Sapienza* court also specifically addressed the snippet of legislative history cited by Plaintiff in her brief: "While the House Conference Report for the bill stated that the Conference Committee intended for 'Little FTC' laws such as the CPA to remain outside the scope of preemption, H.R. Rep. 105-399, at 103

(1997) (Conf. Rep.), courts have still found such laws preempted by the FDCA when the plaintiff's claim fell within a subject the FDA has regulated." 2022 WL 17404919, at *3 n.3 (citing *Goldstein v. Walmart, Inc.*, 2022 WL 16540837, at *7, 10-11 (S.D.N.Y. Oct. 28, 2022)).

### C. The authorities cited by Plaintiff do not address these circumstances and are outliers in any event.

Instead of confronting the *Musikar-Rosner, Bischoff*, *Morgan*, and *Sapienza* cases, which specifically address express preemption in the context of rapid release gelcaps, Plaintiff focuses on a handful of inapposite or outlier authorities. As shown below, those cases do not cast any doubt on the District Court's sound reasoning for dismissing this case.

First, Plaintiff cites (and attaches) the unpublished decision in *Edwards v. Walmart, Inc.*, No. CV 18-9655 (C.D. Cal. Apr. 18, 2019). In that case, the plaintiffs challenged the labeling, marketing, and pricing of rapid release gelcaps. The court denied the defendant's preemption defense on *all* bases. Notably, Plaintiff's attempt to frame the decision as embracing the distinction she makes here between labeling claims on the one hand and marketing and pricing claims on the other hand is inaccurate. In any event, the *Edwards* analysis was definitively contrasted by the District Court in this case and was outright discredited by the *Musikar-Rosner* court.

In this regard, the District Court explained that "*Edwards* denied preemption because of defendant's failure to 'provide[] any binding regulation (or other

28

applicable federal law).' In so doing, the *Edwards* defendant failed to make out their affirmative defense. Clearly no such pleading deficiency exists in this case." A-107 (internal citations omitted).

The *Musikar-Rosner* court went further and explained as follows:

> Plaintiff further cites to *Edwards v. Walmart, Inc.*, which found, among other things, that the TFM only regulates the dissolution standards related to aspirin. No. 18-09655, at *6 (C.D. Cal. Apr. 18, 2019). The 1988 TFM, however, provides that "the agency is also including by reference the dissolution standard for acetaminophen and aspirin tablets as contained in U.S.P. XXI at page 14[.]" Internal Analgesic, Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph, 53 Fed. Reg. at 46251. As such, the TFM plainly regulates the dissolution standards of acetaminophen by incorporation. *See supra*. Separately, the Court notes that 21 C.F.R. § 343 refers to internal analgesic drug products, which encompass acetaminophen. *See id.* The Court therefore respectfully declines to follow *Edwards*.

2024 WL 3596897, at *7 n.10.

Second, Plaintiff cites *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207 (E.D. Cal. 2013), in support of her appellate arguments. In *Corra*, the plaintiff asserted state law claims alleging that defendant misled consumers into purchasing higher SPF-rated sunscreen products, even though the products did not provide more protection than less expensive, lower-SPF alternatives. *Id.* at 1211. The district court held there was no preemption, because the claims would not impose different labeling requirements, since plaintiff was not alleging that the SPF ratings were

29

inaccurate, but rather the manner in which defendant marketed the products was misleading. *Id.* at 1214–15.

Plaintiff omits a piece of the story on that particular type of product. One year later, in *Gisvold v. Merck & Co.*, 62 F. Supp. 3d 1198 (S.D. Cal. 2014), another California district court came to the opposite conclusion. In *Gisvold*, the plaintiff asserted state law claims alleging that defendants falsely marketed sunscreen products with higher SPF values at premium prices, but those products did not provide additional clinical benefits over products with lower SPF values. *Id.* at 1200. Plaintiff sought injunctive relief that would require defendants to include a disclaimer "that a SPF value above 50 does not provide proportional clinical benefits." *Id.* at 1201. The district court held that the claims were preempted, because the sunscreen label complied with FDA regulations, and plaintiff proposed a disclaimer that "plainly adds to and is not identical with the FDA's requirements." *Id.* at 1202. The court expressly distinguished *Corra*, observing that the *Corra* court did not consider whether disclaimers would add to FDA labeling requirements. *Id.* at 1203.

Here, the possibility of Plaintiff's seeking or necessitating disclaimers is directly implicated. Plaintiff asserts in her brief that her "central claim is not that the labels for the Rapid Release Gels 'are themselves per se false or misleading,'" but rather that the "placement of the Rapid Release Gels alongside other cheaper,

nonrapid release acetaminophen products" and the supposed "contextual inference' that the premium priced products were more effective" is her focus.[4] (Init. Br. at 23, 24, 26). In her Complaint, Plaintiff pleads, *inter alia*, for the following relief: (i) "[a]n order requiring J&J to adequately represent the true nature, quality, and capability of the Class Rapid Release Gelcaps;" (ii) "[a]n order (a) issuing a nationwide recall of the Class Rapid Release Gelcaps to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps; and (c) immediately discontinuing any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein;" and (iii) "[a]n order granting declaratory and/or injunctive relief as allowable under state and federal law." A-39–A-40.

The District Court was correct to conclude that Plaintiff's argument regarding her marketing and pricing claims would "create an end-run around the FDCA's express preemption clause." A-107. Given the foreseeability that Plaintiff's

---

[4] Plaintiff also cites *Horti v. Nestle Healthcare Nutrition, Inc.*, 2023 WL 8613601 (9th Cir. Dec. 13, 2023), and *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), though neither is a preemption case. Both, however, mention the concept of a "contextual inference" and, for that reason, they actually underscore the concern that Plaintiff's marketing and pricing claims, if allowed, would directly implicate the possibility of disclaimers and label changes.

marketing and pricing claims would require that the Rapid Release Gelcaps not say "Rapid Release" or that they contain a disclaimer that other products dissolve faster, this Court should find the *Gisvold* reasoning more persuasive than the *Corra* reasoning.

Third, Plaintiff cites *Crozier v. Johnson & Johnson Consumer Cos.,* 901 F. Supp. 2d 494 (D.N.J. 2012). In *Crozier*, the plaintiffs asserted state law claims against Johnson & Johnson Consumer Companies for marketing an antiseptic spray with labeling that was associated with Neosporin, which allegedly would mislead consumers into believing the spray contained antibiotic ingredients. *Id.* at 497. The spray, however, did not contain antibiotics while being significantly more expensive than other generic antiseptic products. *Id.* The district court dismissed the labeling claims on preemption grounds, because FDA regulations "cover the entire label," which includes brand name confusion. *Id.* at 504. The court dismissed the marketing claims on other grounds, because the defendant did not establish that federal law preempted those claims. *Id.* at 505.

The *Crozier* court purported to follow the example set forth in *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271 (C.D. Cal. 2008), stating that "although *Carter* found that some of the plaintiffs' claims were preempted, it did not dismiss their advertising claims on that basis." 901 F. Supp. 2d at 505. The *Crozier* court nevertheless dismissed the consumer fraud claims on the basis of Rule 9(b):

"But the *Carter* court did not discuss preemption in regards to the plaintiffs' consumer fraud claims; the court dismissed those claims under Fed. R. Civ. P. 9(b) because plaintiffs 'provided no details of the alleged fraud' and did 'not provide any facts relating to their reliance on Defendants' alleged misrepresentations.' In the present case, the Court will dismiss Plaintiffs' NJCFA claims for the same reason." *Id.* (internal citations omitted).

In fact, the *Carter* court did dismiss *all* claims on the basis of preemption: "For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED as to all claims pursuant to express preemption under 21 U.S.C. § 379r; and GRANTED as to Plaintiffs' consumer fraud claims pursuant to Rule 9(b)." *Carter*, 582 F. Supp. 2d at 1290. Indeed, the *Carter* court squarely set forth an analysis that would certainly support the District Court's determination that all of Plaintiff's claims are preempted here: "The touchstone of preemption under § 379r is the *effect* that a finding of liability on a particular claim would have on the Defendants, and not the particular common law or state theory upon which that claim was brought." *Id.* at 1283 (emphasis in original)).

Fourth, Plaintiff cites *Jovel v. i-Health, Inc.*, No. 12-CV-5614, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013). In *Jovel*, the plaintiff asserted state law claims against a manufacturer for labeling on dietary supplements that claimed to support brain health in children and adults, but the products did not perform as advertised.

*Id.* at *2. The manufacturer raised a preemption defense, arguing that plaintiff was seeking to impose requirements in addition to the FDCA, but only one potential requirement was identified, which would require demonstrating scientific support for the claimed benefits in court. *Id.* at *5. Although the district court held there was no preemption, it did so because the FDCA already required manufacturers to substantiate their claims and "providing a damage remedy for conduct that violates federal law . . . [did] not impose an additional requirement warranting preemption." *Id.* at *6. The situation addressed by the *Jovel* court is not remotely analogous to this case and the decision is therefore inapposite.

Simply put, none of the cases cited by Plaintiff calls into question the District Court's analysis or conclusion. This Court should affirm the District Court's dismissal and embrace its reasoning, which also is consistent with the decisions of the *Musikar-Rosner, Bischoff*, *Morgan*, and *Sapienza* courts.

## **CONCLUSION**

As the other courts that have dealt with this claim have correctly determined, Plaintiff's claims are barred by the exclusive preemption of section 379r(a). Indeed, Plaintiff conceded as much by abandoning her argument that the label somehow avoids preemption. Like labeling, Plaintiff's state law claims purporting to regulate "marketing and pricing" impose requirements "different from, in addition to" those within the exclusive purview of the FDA, and, as courts have held, barred by preemption. For the foregoing reasons, the District Court's judgment should be affirmed.

Dated: March 7, 2025.                         Respectfully submitted,


<u>/s/ *Joseph H. Lang, Jr.*</u>
Joseph H. Lang, Jr.                           Mark A. Neubauer
CARLTON FIELDS, P.A.                          CARLTON FIELDS, LLP
4221 West Boy Scout Boulevard                 2029 Century Park East
Suite 1000                                    Suite 1200
Tampa, Florida 33607-5780                     Los Angeles, California 90067-2913
Telephone: (813) 229-4253                     Telephone: (310) 843-6300
Facsimile: (813) 229-4133                     Facsimile: (310) 843-6301
jlang@carltonfields.com                       mneubauer@carltonfields.com

*Attorneys for Appellee*
*JOHNSON & JOHNSON CONSUMER INC. n/k/a KENVUE BRANDS LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the word limitation of Local Rule 32.1(a)(4)(A) because this brief contains **8,138** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

/s/ *Joseph H. Lang, Jr.*
Joseph H. Lang, Jr.

36

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of March, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will provide service on all counsel of record, including those identified below, via transmission of Notices of Electronic Filing.

Mitchell Breit
MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN, PLLC
405 East 50th Street
New York, New York 10022
mbreit@milberg.com

*Attorneys for Plaintiff - Appellant*

/s/ *Joseph H. Lang, Jr.*
Joseph H. Lang, Jr.